UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| THOMAS VERSE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | NO. 3:12CV263-PPS |

## OPINION AND ORDER

Thomas Verse filed applications with the Social Security Administration for supplemental security income benefits and disability insurance benefits. After being denied benefits initially and upon reconsideration, Verse obtained a hearing before an Administrative Law Judge who found that Verse was not disabled within the meaning of the Social Security Act. Verse's request for review was denied by the Appeals Council, and he now brings this appeal of the final adverse determination of the Commissioner.

Although the ALJ found that Verse suffers from one severe impairment due to a previous injury to his right leg, he found that Verse does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in the Social Security regulations so as to conclusively establish disability. [DE 15 at 24-25.] The ALJ went on to find that Verse retained the residual functional capacity (or "RFC") to perform medium work with certain limitations.. [*Id.* at 25.] This determination must be affirmed if "supported by substantial evidence." 42 U.S.C. §405(g). *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Verse now offers three challenges to the Commissioner's adverse decision.

**ALJ's Assessment of Residual Functional Capacity**

Verse's first contention is that the ALJ's RFC determination is not supported by substantial evidence.  The RFC is not itself a medical opinion but a legal determination, and is an issue reserved to the Commissioner.  20 C.F.R. §§404.1546(c), 404.1527(d)(2).  The RFC is the ALJ's ultimate finding, based on consideration of the entire record (including all medical opinions), as to what an individual can do despite his impairments.  Social Security Rule 96-5p, 1996 WL 374183, *4 (1996).

The ALJ concluded that Verse "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except with more than occasional climbing and more than frequent postural changes, with no concentrated exposure to respiratory irritants." [DE 15 at 25.][1] Verse complains that the RFC fails to account for his right leg deformity, atrophy, swelling, his limitation on the ability to walk and his ability to squat only halfway. [DE 24 at 12.]   Of those five matters highlighted by Verse, the first three are physical conditions and the last two are functional limitations.  The ALJ does in fact refer in his analysis to the two functional limitations on walking and squatting, and his failure to have specifically referenced the first three physical conditions is not shown to be a critical omission in his reasoning.

---

[1] At the hearing, the ALJ posed Verse's RFC to the vocational expert this way:

> Assume that individual was limited to work at the medium exertional level. Assume further the individual was limited to occupations which do not require more than occasional climbing; nor more than frequent bending, stooping, kneeling, crouching and crawling; did not require concentrated exposure to extremes of temperature, wetness, humidity, fumes, odors, dusts, gases.

The ALJ's decision expressly finds that the damage to Verse's right leg from a long-ago workplace accident has resulted in a severe impairment that precludes heavy work. [DE 15 at 24, 26.] The ALJ's discussion expressly acknowledges many facts about Verse's leg impairment, including that Verse cannot sustain much pressure on the leg, that it is sometimes painful, that he can walk one block, that he needs to alternate between sitting and standing, that he walks slowly with a wide gait, that he limps favoring his right leg, that he showed full and equal muscle strength, that he had normal reflexes and sensation, that he had difficulty hopping, that he was limited in squatting, that he was able to walk on his heels and toes, that his tandem walking was limited, and that his range of motion was normal. [*Id.* at 26.] Among these considerations, the ALJ did in fact consider what the record evidence offered concerning Verse's ability to walk and his ability to squat. In addition to these express findings, the ALJ cites – and thereby shows he reviewed, considered and relied upon – the reports of examining physicians Dr. Thomas Barbour and Dr. B. Whitley. [*Id.*]

Against this backdrop, Verse utterly fails to demonstrate why the ALJ committed reversible error by failing to expressly mention the deformity, atrophy or swelling of Verse's leg. In view of the ALJ's discussion and detailed findings concerning Verse's leg injury and its impact on his functioning, Verse cannot demonstrate that the ALJ's failure to specifically mention these conditions is of any significance. An ALJ need not undertake a written evaluation of every piece of evidence and scrap of testimony. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). In my view it's a red herring to suggest that these conditions represent "inconsistencies" that the ALJ was required to address.

For purposes of determining whether or not Verse is disabled, it's not the *description* of his leg condition, but its *impact on his functioning* that is of importance. Verse quotes the Seventh Circuit holding that "[i]n determining an individual's RFC, the ALJ must evaluate all *limitations that arise from* medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (emphasis added). Here, the ALJ's decision reveals his consideration and evaluation of all the *limitations* arising from Verse's damaged leg. And what I've set out above demonstrates that the ALJ engaged in a reasoned analysis and then adequately explained why he determined that the condition of Verse's leg limited him to medium work with certain limitations as to climbing and postural changes.

Furthermore, the limitations the ALJ included in his RFC are consistent with and supported by the opinion of Dr. Whitley as to Verse's exertional and postural limitations, which in turn expressly took into account Verse's gait, his limp, his reflexes, his muscle strength and his limited ability to squat. [DE 15 at 276-77.][2] Verse does not demonstrate that the ALJ dismissed any line of contrary medical evidence, or indeed that any contrary medical evidence or opinion existed.

To the extent that Verse's arguments invite me to undertake my own review of the medical records to reconsider the persuasiveness of the ALJ's analysis, that is not my role. Courts are not to "reweigh the evidence or substitute our judgment for that of the ALJ's." *Pepper*

---

[2] Claimant's arguments concerning the Commissioner's failure to develop evidence as to the possible presence of Reflex Sympathetic Dystrophy and Dr. Whitley's lack of expertise in that area are waived because raised by claimant for the first time in his reply. [DE 30 at 2-5.] *United States v. Schubert*, ___ Fed.Appx. ___, 2013 WL 3224582 at *3 (7th Cir. June 26, 2013); *Lingle v. Kibby*, 2013 WL 1558545 at *3 (7th Cir. April 15, 2013).

*v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).  Instead, I must affirm the ALJ's decision where it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted).  The ALJ's decision builds "a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).  No error requiring reversal is demonstrated.

### ALJ's Evaluation of Claimant Verse's Credibility

Verse's next challenge to the Commissioner's final decision is that the ALJ erred by deciding the issue of disability first, before assessing Verse's credibility.  This argument elevates form over substance.  At the second step of the disability rubric, the ALJ found that Verse has one severe impairment due to his damaged right leg, offering the single comment that the "impairment poses more than minimal work-related functional restrictions; it precludes heavy work." [DE 15 at 24.] This is not a determination of disability, or even of Verse's RFC.  It is merely a brief explanation of the basis for determining that Verse's leg injury constitutes a severe impairment.

The ALJ's decision goes on at step five to do what Verse now complains was improperly preceded by a disability determination, namely the decision considers Verse's credibility as to disabling symptoms by considering any medically determinable impairments that might account for those symptoms and then comparing the consistency of Verse's statements with other information in the record to assess their credibility.  20 C.F.R. §404.1529(a).  This analysis is correctly offered by the ALJ at step five to support his RFC determination, and then ultimately

followed – after further pertinent determinations about Verse's ability to perform past relevant work and the availability of jobs that Verse can perform – by the ultimate conclusion that Verse is not disabled within the meaning of the Social Security Act. [DE 15 at 25-28.] No fatal deviation from the required analysis is demonstrated.

Next, Verse claims that the ALJ misstated the evidence, but he is only partially correct. The ALJ in fact correctly cites Verse's application materials in support of the observation that Verse did not initially mention a respiratory impairment. [*See* DE 15 at 183.] The ALJ says Verse did not allege a respiratory disorder in his first appeal, citing the record where Verse did mention treatment for an asthma attack and being out of breath, but did not clearly allege a disabling respiratory disorder. [*See id.* at 238, 240.]  The ALJ also acknowledged that Verse had added an allegation of breathing difficulty when he filed his request for a hearing. [*See id.* at 247.] In any event, these challenged statements are not part of the ALJ's credibility assessment with respect to Verse's RFC, but are found in his earlier discussion about whether asthma has been shown to be a severe impairment – itself a determination that Verse does not challenge. Picking this nit doesn't get Verse anywhere.

Verse finally claims that the ALJ's credibility assessment is impermissibly based on "speculation" but doesn't clearly identify what in the ALJ's analysis amounts to speculation. [DE 24 at 17.] A court's review of an ALJ's credibility determination is deferential, "for an ALJ, not a reviewing court, is in the best position to evaluate credibility." *Simila v. Astrue,*, 573 F.3d 503, 517 (7th Cir. 2009).  The credibility determination is reversed "only if it is so lacking in explanation or support that we find it 'patently wrong.'" *Id.,* quoting *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).  Verse complains that the ALJ referenced Verse's non-compliance

with doctor's directions to quit smoking and found Verse "insincere" in his efforts to obtain care, but didn't ask Verse about these matters at the hearing, and that the ALJ rejected Verse's attorney's request for an additional consultative examination. [DE 24 at 17.] Verse cites to no authority supporting a conclusion that these circumstances require reversal. [*Id.*]

Addressing the last issue first, where a claimant is represented before the Commission, "the burden is on the claimant to introduce some objective evidence that further development of the record is required." *Poyck v. Astrue*, 414 Fed.Appx. 859, 861 (7th Cir. 2011). Verse doesn't (and didn't) meet this burden. The ALJ expressly found that "there is nothing in the record and testimony to suggest that further examinations would reveal anything of substance." [DE 15 at 22.] Verse doesn't show now that this conclusion was erroneous.

As to the other matters, for the first time in his reply Verse cites *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008), for the proposition that an ALJ must not draw any inferences from infrequent treatment or failure to follow a treatment plan unless the ALJ has explored a claimant's explanations as to the lack of medical care. This principle in *Craft* is based on the potential for a financial explanation. The record here demonstrates that the ALJ was aware of and "sympathetic to [Verse's] situation of being unable to afford medical care." [DE 15 at 22.] In any event, Verse fails to demonstrate how the *Craft* argument has any application to smoking cessation, for which no expense is necessarily incurred and given that smoking itself is an expensive habit.

I admit that it is unclear what the ALJ means when he says that Verse's efforts to obtain care have been "insincere." [DE 15 at 26.] The exhibit he cites is a record of Verse's visit to the ER at St. Joseph Regional Medical Center where he was diagnosed with gastroenteritis. From it, I can see nothing in particular to support the ALJ's curious statement, other than perhaps the

notation that Verse was unwilling to provide a urine sample when urinalysis testing was ordered. [*Id*. at 260.]

But even if this one observation by the ALJ is unsupported, I am not persuaded that remand is warranted. Where the decision against disability is "overwhelmingly supported by the record" such that remand would be pointless, the lack of a sufficient rationale for the ALJ's credibility determination may be harmless error. *Mueller v. Colvin*, 2013 WL 1701053 at *3 (7th Cir. April 19, 2013); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("[i]f it is predictable with great confidence that the agency will reinstate its decision on remand"); *Allord v. Barnhart*, 455 F.3d 818, 821-22 (7th Cir. 2006).

Consideration of harmless error raises a question whether what is being challenged really amounts to a credibility determination at all. I can't identify any particular factual statements or claims by Verse that the ALJ rejects as incredible. As is sometimes the case, Verse seems here to invoke credibility assessment standards actually to address what amounts to the ALJ's RFC determination generally, rather than any actual finding that Verse's testimony was not credible. The ALJ appears to have accepted Verse's testimony concerning his difficulty breathing at times and in certain conditions (hence the RFC limitations as to concentrated exposure to respiratory irritants), and his testimony concerning pain and weight-bearing in his injured leg (hence the RFC limitations as to medium exertional work and postural changes). So the ALJ did not disbelieve Verse's testimony so much as make an unwelcome conclusion about how limiting those conditions were to Verse's capacity for work – in short, his RFC determination.

Applying the proper deferential standard of review, I cannot reverse the ALJ's assessment of Verse's credibility. Without discrediting any particular assertion, the ALJ's

decision offers a number of reasons for refusing to find that Verse's testimony generally required a different RFC determination.  The credibility-related factors referenced in the ALJ's decision include that:

- In his disability application, Verse indicated his last job ended because his employer let him go, and Verse did not assert that he was unable to continue working;

- Many of Verse's responses were inconsistent, with the example that Verse stated in an SSA Function Report that he does not prepare his own meals but spends 1-2 hours cooking, and later testified before the ALJ that he gets along fine as long as there is a McDonald's nearby;

- Verse testified that he could not assert that he cannot do anything;

- Another "incongruent" response cited: Verse told a doctor he awakes at night short of breath but it is relieved by eating;

- Verse did not identify any complaints of leg pain at any time when being treated for breathing difficulty; and

- The state agency medical consultant opined that Verse could perform medium exertional work, and there was no evidence of any contrary medical opinions about Verse's functional capacity.

[DE 15 at 26.]  None of these express considerations taken into account by the ALJ is disputed by Verse now.  I certainly cannot say that the ALJ's conclusions about credibility were so lacking in explanation or support as to be patently wrong.

In fact, although the Seventh Circuit has acknowledged that claimants have an incentive to exaggerate their symptoms, here Verse's own testimony often displayed a refreshing candor that was not particularly supportive of his disability claim.  Verse testified to a recent series of six temporary seasonal jobs with various employers, including a then-current one with the city doing yard waste pickup. [DE 15 at 40, 44.] In that context, when asked point-blank if he was able to work, Verse replied: "I'm trying the best that I can, sir." [*Id.* at 45.]  Verse also

9

acknowledged that most of the previous year he had collected unemployment benefits, which required him to agree that he was able to work. [*Id*. at 47.] The ALJ asked Verse if he thought he was able to work then, and Verse responded: "You know, I...I can't... turn down no work." [*Id.*] As the ALJ referenced in his decision, Verse told the ALJ: "I'm going to put it like this to you, Your Honor, it's hard for me in this society to say I can't do anything." [*Id*. at 49.]  For all the reasons cited by the ALJ, and given the limited support Verse himself provided for a finding of disability, I cannot find that the ALJ's credibility determination was patently wrong. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).

### ALJ's Reliance on Flawed Vocational Expert Testimony

Next Verse argues that the ALJ failed to provide a complete hypothetical to the vocational expert because he omitted "functional limitations on the issues of walking and squatting or the impact of the swelling" of Verse's right leg. [DE 24 at 19.] This is a rehash of Verse's earlier arguments about the ALJ's residual functional capacity determination, and they are no more successful in this new form.  I have already determined that the RFC determination was appropriately supported by evidence of record and was adequately explained in the ALJ's decision.

Finally, Verse complains that the hypothetical question posed to the vocational expert differed from the ALJ's statement of the RFC in his written decision. [DE 24 at 20.] This is true, but the Commissioner points out that the version posed to the expert was actually *more generous* to Verse, that is, it attributed greater limitations, and yet the ALJ testified that the hypothetical individual would be capable of at least 100,000 jobs statewide and 500,000 nationwide. [DE 16 at 58.] So with the lesser limitations the ALJ described in his written opinion, Verse would be

capable of even more jobs than that. The discrepancy therefore does not support a conclusion that the Commissioner failed to meet his burden to demonstrate the existence of significant numbers of jobs the claimant is capable of performing. *See Strack v. Astrue*, 2011 WL 4062524 at *22 (N.D.Ind. Sept. 13, 2011) ("This more restrictive hypothetical resulted in a number of jobs still available.").

## Conclusion

After a careful review of the parties' briefs, the medical records, the ALJ hearing testimony, and the ALJ's decision, I have concluded that substantial evidence in the record supports the ALJ's finding that Verse is not disabled.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Thomas H. Verse's applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act is AFFIRMED.

The Clerk shall enter judgment accordingly.

**SO ORDERED**.

ENTERED: September 16, 2013.

    /s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT